The next case today is United States v. Kelvin Velez-Vargas, Appeal Number 21-1298. Attorney Perez, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. This is AFPD Franco Perez. I am appearing for the appellant Kelvin Velez-Vargas. Judge Thompson, may I please reserve two minutes for rebuttal? Good morning. Yes, you can. Thank you. Up until two days ago, this case was really about one putative predicate offense, an Article 109 conviction. That was the only prior that the district court relied on to impose a six-level sentencing enhancement. It was the only prior the PSR designated a crime of violence all the way back in December of 2020, and it was the only prior the trial prosecutor argued counted as a predicate. On appeal, after being confronted with additional authorities supporting our claim that 109 cannot support the enhancement, the government now concedes that the 109 conviction is not a valid predicate. The government nevertheless argues that a replacement predicate, an Article 515 conviction, can do the work that Article 109 can no longer do. The court should decline the invitation to rely on the substitute predicate for a number of reasons. Number one, the government relied or has waived any reliance on 515 by failing to object to the PSR when it was, when it did not designate that conviction as a crime of violence. Under Puerto Rico Local Rule 132b3a, a party that does not lodge timely objections to the pre-sentence report waives those objections. Even on appeal, after we argued that reliance on 515 was waived, the government did not ask the court to excuse its waiver, and it has not provided any reasons for its failure to object below. The government... So, Counsel, the gun charge was listed as a prior. Was there any discussion at all at the sentencing about what it meant other than it being a prior? I mean, was it... In other words, there are occasions when the court says there are at least three or more. Was there any language like that expressed by the court below? Just to verify that I understand your question, Your Honor. Is your question whether the sentencing judge... Yes. ...made any expressions that this could have been a second potential predicate? Yes. No, there was none of that sort, not even the PSR, and that's why we think it's problematic. If we look at the Fourth Circuit's decision in Hodge, that court held that under the expressio canon, when a predicate is designated by the PSR, that implicitly means that the other ones have been excluded, and the government cannot suddenly spring these other predicates up on appeal. And it definitely cannot or should not be able to do so invoking the truism that affirming on any basis can save a party from waiver. So, Counselor, having taken a look at that Hodge case over the weekend, and it definitely says what you said, the question is, why shouldn't we remand it for resentencing? That's a good question. As opposed to just indicating that it's a waiver. Well, Your Honor, I think remanding it for a resentencing would be problematic because the government has already had a full and fair opportunity to litigate the issue. And let me just put this into perspective. Five minutes remaining. That six-level enhancement significantly increased our client's sentence. He is already over-serving the correct guideline range. So a remand so that the government can then again determine or have a second shot at demonstrating that the prior actually applies when it did not do so in the first place would just prejudice us and it would incentivize this type of conduct in the future. It would... Look, Counsel, we have to remand for resentencing, don't we? You just want us to remand with instructions not to allow the government to use the way what you consider to be the waived protocol. Right, and I apologize if I was unclear. Yes, it should be a closed remand for resentencing using a base offense level of 14. I don't know if Your Honors want me to go any further. I am willing to provide. Let me, if that's okay with the court, let me just talk about the case that the government presented yesterday, Nieves-Borrero, and it contends that that case allows the court to affirm on any basis that's evident from the record, but Nieves-Borrero is not a substitute predicate case. It is a case where the court affirmed on another basis under the elements clause despite the government's concession that the predicate at issue did not fit within the residual clause. So I don't think that there's any case from this court, at least as far as I've identified, that allows the government to do something like that. If the court has no further questions, I would yield the remainder of my time or my eight minutes. Thank you so much. Thank you. Thank you, Attorney Perez. Please mute your audio and video at this time. Attorney Besoza-Martinez, please unmute your audio and video and introduce yourself on the record to begin. Good morning, Your Honor. May it please the court. Francisco Besoza-Martinez for the government. Your Honor, I'd like to start by pointing out two quick things. Brother Counsel said that the government conceded that aggravated assault did not qualify. I'd like to clarify that we have not conceded that it does not categorically qualify. We're just recognizing that with these new developments that have come up, the question is a bit unclear. And given the fact that it hasn't been briefed, that's why the government withdrew its reliance on that so that we can further address that on another occasion. And second, the government acknowledges that it did not argue 515 below because it thought it had the winning argument with this aggravated assault conviction. And given this new development, obviously, we are not looking at a second bite of the apple here. In fact, had we argued 515, it would have been two crimes of violence and that would have made him a career offender. What we want is simply an opportunity to get to the same result. What about the local rule involving waiver, if you don't object? Yes, Your Honor, we recognize that. However, as we point out, this court does have the authority to affirm on any ground, even if that ground was not raised below. And because in this case, the question is purely legal, we would suggest that no further factual determination at the district level for this court to decide the purely legal question of whether his Article 515 conviction qualifies as a crime of violence. But that doesn't explain to us why we should overlook the waiver. You had the local rule. You were on notice that if you didn't put forth the 515 argument, it would be deemed waived. So I think it really fairly can be characterized as a second bite at the apple. You had a chance to make the argument. You elected not to make it. Circumstances have now changed, and so you want to make it now because the rug has been pulled out from under your first argument. I'm struggling with the notion of why we should excuse, because if we excuse the waiver in this case, we would have to do it presumably in any other comparable case. And I'm struggling with the notion of why that's so. The government, with all the tools it has at its disposal, knew it had this argument, presumably thought it could win with this argument, but chose not to make it. I wouldn't necessarily... Let me rephrase that. Like I said, the government acknowledges it did not make the argument below. However, these are particular circumstances where the circumstances under which the government proceeded in the district court by focusing on the aggravated assault, these circumstances changed not just on appeal, but quite literally one week, five days before this oral argument, well after the briefings were done in this case. And despite that, the government did make this argument as an alternative path for based on this court's discretionary authority to affirm on any grounds supported by the record, even if not raised below. What do you do about... Here's what's concerning me, and maybe you can put my concern at rest. If we have a rule that when the government raises an argument and the other side opposes it, the government knows it's in play, if we have a rule that the government can nevertheless hang on to an alternative argument and not raise it and see how the appeal goes, then we've set up this seriatim procedure where the final resolution of the correctness of the sentence will be dragged out much longer, another whole appeal round, thereby exposing the defendant to what would turn out to be improper imprisonment if the defendant wins. Whereas if we have a rule that, no, if you want to raise an argument and it's contested and you think you have an alternative, raise the alternative then, then we reduce the likelihood that should the government be wrong, as it turned out to be wrong on this issue, we won't be in the unfortunate situation of having someone already serve the prison sentence. In this case, if we send it back and you get a ruling in your favor and they oppose it and it turns out that was wrong, the person's sentence would have been essentially done. So how do we accommodate for that if we went your way? Your Honor, I understand the court's concern, but with regard to the razor wave rule, I think that is one of the primary reasons for that rule is to avoid sort of bad faith sandbagging by the parties, and that's not what the government's intending here. Like I previously mentioned, we focus on- Four minutes remaining, four minutes. Because we genuinely believe that that was the winning argument, and we thought that that enhancement was more than enough in this case. Had we argued for both, it would have led to a courier offender, may have led to a courier offender designation, which would have substantially increased the guideline even more. And in this particular case, the government just decided to rely on the one for the six-level enhancement rather than potentially a courier offender designation. Go ahead, Judge Selya. The reason for the razor wave rule isn't simply to avoid bad faith sandbagging, it's to avoid, it's to bring an end to proceedings, to avoid what Judge Kayada aptly characterized as seriatim proceedings. Because I'm worried from another point of view, that if we grant you the waiver that you request, what do we do the next time a defendant is up here, has a losing argument, but says, oh, I have a winning argument that I didn't make in the district court or didn't object to when the PSI report, the presentence report came down. I want you to waive the razor wave rule so I can make that argument now. You just did it for the government in Dulles Vargas' case. Because justice has to be even-handed. And it seems to me we've been pretty tough on the razor wave rule because it's in the interest of the efficient and fair administration of justice. And it seems to me that once we start making an exception for you, we've got to be willing to make that exception for the defendants when they ask us. And I don't know where that ends up, but I have a feeling that I'm not going to be happy with where it ends up. Your Honor, if I understand your concerns, I would suggest that this isn't an exception for the government, but rather, for lack of a better word, an exception for the circumstances. For example, in the situation that you have mentioned, where in a future case, the defense comes up and they realize that they have another argument, we wouldn't suggest that waiver be bypassed if the legal landscape remains the same as it always was. What we're saying here is that the legal landscape has shifted. It's only shifted to the extent that you thought your position was firm, but whether it was an acceptable predicate was litigated below. So, you were on notice that at least there was an argument that it wasn't an acceptable predicate, and you had an option to argue in the alternative. Your Honor, yes, we could have argued this in the alternative, but as already mentioned, that would have brought the issue of a career offender, which the government, for sentencing of this defendant, just believed that wasn't decided. The government decided that a sixth level enhancement was enough in this case, and I lost my train of thought. Sorry, Your Honor. So, let me see if I can see where that train was going. Are you telling us that if we hold this waiver here, then we would be forcing the government to fire away with all prior offenses and therefore have career offender findings in cases where there wouldn't already be them? Correct, Your Honor, yes. It would require us to fire all offenders, and even in cases where the government might agree that maybe this defendant isn't, for lack of a better word, worthy of a career offender designation. But why couldn't you argue in the alternative that there was just another predicate for the status that you sought? Because we could make that argument, Your Honor, but by presenting both, that would raise the possibility that it would make it even more apparent that a court could determine that both qualified and that therefore notwithstanding the government's argument for a sixth level, the court would nevertheless go with a career offender, which it has the discretion, of course, to do. If Congress and the Sentencing Commission have said that a defendant who commits multiple crimes of violence should be considered a career offender, why would the government be hesitant about putting forward an offense? I mean, that's a decision for Congress and the Sentencing Commission to make in the first instance as to who's eligible for a career offender designation. Yes, it's Congress' prerogative to, at the first instance, determine who may be eligible. But once we are inside the courtroom, Your Honor, the U.S. Attorney's Office has some leeway in the same way that it has leeway in terms of prosecutorial decisions. No one's suggesting you can't tell the district court that you're not arguing for a career offender designation in this case. That doesn't seem to me a justification for withholding from the district court material that's relevant to the prior record of the offender. I understand your concerns, Your Honors, but... Your time is up. Thank you, Your Honor. Thank you. Thank you, Attorney. Basosa-Martinez, please mute your audio and video at this time. And, Attorney Perez, please unmute your audio and video. You have a two-minute rebuttal. Introduce yourself on the record to begin. Hi, Branco Perez, appearing for the appellant. May it please the Court. I just want to make four very brief points. Number one, the only justification my brother on the other side has made for not designating the 515 conviction as a crime of violence or presenting that argument in the alternative is because that would have subjected, in the government's view, Mr. Velez to a career offender enhancement. But I just want to correct that that's not the case because Mr. Velez's offensive conviction is not itself a crime of violence. And for there to be a crime of violence, the instant offense, the offensive conviction, must also be one. I'm also... I also don't think that the 109 and 515 convictions were separated by an intervening arrest, so they would not count as strikes one and two. The second point I wanted to make is that the government's Rule 28J letter that it filed on Friday makes a series of assertions that I'm not going to get into unless the Court requires further briefing, but this has been evident to us or at least to practitioners in Puerto Rico for a while. Number three, this is not a case that presents a purely legal question. And just to show how undeveloped the record is, I would refer the Court to pages 45 and 46 of the amendment. I'm sorry, of the appendix. That is the information for the 515 offense and the judgment, the reclassified judgment. And when you contrast that with the PSR, you see that there are significant differences in the facts. So we had no occasion to object to that below. This Court is not a fact-finding court, and had the government made the argument below, the record would have been developed. So this is not a purely legal question. And finally, we would simply ask the Court, implore the Court, to provide some guidance on Article 109 in its decision. This is an issue, as you can see from our reasons why oral arguments should be heard section in the brief, where there is a deeply entrenched split among the district courts in Puerto Rico. So we would ask that the Court simply note the government's concession here, since this will affect other defendants in other cases. For these reasons, I ask that the Court vacate the judgment and remand for a closed resentencing. Thank you, Counselor. Thank you, attorneys. You may disconnect from the hearing at this time.